1  Monica A. Mihell (SBN 108829)
   MIHELL & ASSOCIATES
2  Main Street Law Building
   2115 Main Street
3  Santa Monica, CA 90405

4  Telephone: (310) 399-3259
   Fax No: (310) 392-9029
5

6  Attorneys for Plaintiff,
   Satish Shetty
7

8
                    UNITED STATES DISTRICT COURT
9
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
10
   SATISH SHETTY,
11                                    )
                                      )  CASE NO. 13-CV–06403 MWF-JCG
12           Plaintiff,               )
                                      )
13      vs.                           )  VERIFIED SECOND AMENDED
                                      )  COMPLAINT FOR:
14  NATIONSTAR MORTGAGE, LLC,         )
    a Delaware Limited Liability Corporation;  )
15  FAMILY LENDING SERVICES, INC.;    )  (1) Negligence  Foreclosure
    STANDARD PACIFIC MORTGAGE,        )  (2) Negligence
16  INC., a Delaware Corporation,     )  (3) Wrongful Foreclosure
    MORTGAGE ELECTRONIC               )  (4) Violation of 12USC §1692 et
17  REGISTRATION SYSTEMS INC., a      )  seq.
    Delaware Corporation; MERSCORP    )  (5) Cancellation of Instruments
18  HOLDINGS, INC., a Delaware        )  (6) Quiet Title
19  Corporation; LEHMAN BROTHERS      )  (7) Violation of Business and
    HOLDINGS, a Delaware Corporation, )  Professions Code Section 17200
20  U.S. BANK NATIONAL                )  (8) Fraudulent Misrepresentation
21  ASSOCIATION, as Trustee for       )  (9) Unjust Enrichment
    STRUCTURED ADJUSTABLE RATE        )  (10) Slander of Title
22  MORTGAGE TRUST, Mortgage Pass-    )  (11) Violation of Civil Code 2934
    Through Certificate Series 2006-6, a  )  (12) Accounting
23  Delaware Corporation; REGINA      )
24  LASHLEY, and individual; AURORA   )      JURY TRIAL DEMANDED
    BANK FSB; and DOES 1 to 100,      )
25  Inclusive.                        )  CASE NO.: CV-13-6403 MWF-JCG
                                      )
26           Defendants.              )  Assigned to: Hon. Michael W.
                                      )  Fitzgerald
27  _____

                                    1

1

2   COMES NOW, Plaintiff Satish Shetty (hereafter "Plaintiff") , who

3   alleges the following causes of action, as follows:

4   **JURISDICTION AND VENUE**

5   1.   This Court has original jurisdiction over the claims in this action

6   based on 28 U.S.C. §§1331, 1332, 1343, 1367, 2201 and 12 U.S.C. §1692 which confers

7   original jurisdiction on federal District Courts.

8   2.   This Court has supplemental jurisdiction over the pendant state

9   claims because they form a part of the same case or controversy under Article III of the

10   United States Constitution, pursuant to 28 *U.S.C.* §1367.

11   3.   Venue is proper in this Court as the unlawful conduct, illegal

12   practices, and acts complained of herein are alleged to have been committed in the State

13   of California, County of Los Angeles, in the Central District of California.  Plaintiff is, and

14   at all times was, relevant to this complaint, a resident of Los Angeles, County of Los

15   Angeles, State of California.  The property that is the subject of this litigation is in Los

16   Angeles, County of Los Angeles, State of California.  All Defendants reside in this Distirct

17   within the meaning of  28 U.S.C. §§1391(c) and Defendants regularly conduct business in

18   this District, the Central District of California.

19   **THE PARTIES**

20   4.   Plaintiff is an individual residing in the County of Los Angeles,

21   State of California. Plaintiff is the assignee of all claims and rights of Assignor Atiya Khan,

22   the former owner of the subject property.

23   5.   By virtue of the Assignment and as a Grantee of the subject

24   property commonly known as 45537 Bison Court, Temecula, California 92592-4803, APN

25   No. 961-381-007-9.  The legal description is as follows:

26

27

2

1         Lot 17 of Tract No. 29798-10 In the City of Temecula, as shown by Map on file in

2    Book 365, Page(s) 31 through 37, inclusive, of Maps, in the Office of the County

3    Recorder of Riverside County, California.

4    [A true and correct copy of the aforementioned Grant Deed, dated June 17, 2013 is

5    attached hereto as Exhibit "A" and incorporated here by this reference].

6        6.     Plaintiff is informed and believes, and thereon alleges, that

7    Defendant U.S. Bank N.A. (Hereafter referred to as "U.S. BANK, Trustee") is and was, at

8    all relevant times, a trustee for Structured Adjustable Rate Mortgage Loan Trust

9    Mortgage Pass Through Certificates, Series 2006-6 and is a national banking association

10    organized under the laws of the United States of America with its principal place of

11    business in Minneapolis, Minnesota and Cincinnati, Ohio, purportedly doing business in

12    the State of California as a trustee as it relates to the present controversy.

13        7.     Plaintiff is informed and believes, and thereon alleges, that

14    Defendant Family Lending Services, Inc. (hereafter referred to as "Family Lending") is

15    and was, at all relevant times, a business entity incorporated in the State of Delaware and

16    doing business in Orange County in the State of California. Defendant Family Lending is

17    and/or was an originator of debt instruments for sale and not a lender as represented in

18    the various documents in controversy in the present matter, specifically the Note and

19    Deed of Trust referred to herein at various times.

20        8.     Plaintiff is informed and believes, and thereon alleges, that

21    on or about May 9, 2007, Defendant Family Lending became a banking arm of Defendant

22    Standard Pacific Mortgage, Inc. (hereafter referred to as "Standard Pacific"), a Delaware

23    Corporation and doing business in the mortgage finance business in the State of

24    California.

25        9.     Plaintiff is informed and believes, and thereon alleges, that

26    Defendant Nationstar Mortgage, L.L.C. (hereafter referred to as "Nationstar") is and was,

27    at all relevant times, a limited liability company organized under the laws of the State of

1  Delaware and doing business in the State of California as a loan servicer and/or debt
2  collector and not as a lender, lender's succesor or asignee of beneficiary of the Note and
3  Deed of Trust referenced herein.

4         10.    Plaintiff is informed and believes, and thereon alleges, that
5  Defendant Merscorp Holdings, Inc. (hereafter referred to as "Merscorp") is and was, at all
6  relevant times, a Delaware corporation organized under the laws of the State of Delaware
7  and doing business in the State of California.

8         11.    Plaintiff is informed and believes, and thereon alleges, that
9  Defendant Mortgage Electronic Registration Systems, Inc. (hereafter referred to as
10 "MERS") is and was, at all relevant times, a Delaware corporation organized under the
11 laws of the State of Delaware and doing business in the State of California.  MERS is
12 named as a beneficiary solely as nominee for the lender , lender's successors under the
13 Deed of Trust dated May 9, 2005, referenced herein.

14        12.    Plaintiff is informed and believes, and thereon alleges, that
15 Defendant Integrated Lender Services, Inc. (hereafter referred to as "Integrated") is and
16 was, at all relevant times, a Delaware corporation organized under the laws of the State
17 of Delaware and doing business in the State of California.  Plaintiff alleges that Integrated
18 is neither the original trustee, duly substituted trustee nor a party to the original
19 transaction.

20        13.    Plaintiff is informed and believes, and thereon alleges, that
21 Defendant Lehman Brothers Holdings, Inc. (hereafter referred to as "Lehman") is and
22 was, at all relevant times, a Delaware corporation organized under the laws of the State
23 of Delaware and, formerly, doing business in the State of California.  Lehman is a
24 sponsor and seller of borrower's debt instruments that constitute, in part, the assets of
25 Defendant Structured Asset Securities Corporation referred to herein below.

26        14.    Plaintiff is informed and believes, and thereon alleges, that
27

1  Defendant Structured Asset Securities Corporation (hereafter referred to as "Structured")
2  is and was, at all relevant times, a Delaware corporation organized under the laws of the
3  State of Delaware and doing business in the State of California.  Defendant Structured is
4  a special purpose corporation that sold borrower's debt instruments to Structured
5  Adjustable Rate Mortgage Loan Trust, Series 2006-6 (hereafter referred to as "
6  Structured Series 2006-6") a common law trust formed under the laws of the State of New
7  York and for which Defendant U.S. Bank, Trustee serves as a trustee.

8         15.     Plaintiff is informed and believes, and thereon alleges, that
9  Defendant Regina Lashley (hereafter referred to as "Lashley") is and was, at all relevant
10  times, an individual who acted in the capacity as, what is commonly referred to as a
11  "robo-signer" and employed by Aurora Bank, FSB, residing in the State of Nebraska.

12         16.     Plaintiff is informed and believes, and thereon alleges, that
13  Defendant Aurora Bank FSB (hereafter referred to as "Aurora Bank") was a federally
14  insured bank that became inactive on or before June 5, 2013.  Plaintiff alleges that
15  Defendant Aurora fabricated and caused to be executed self serving and fabricated
16  documents in order to give the air of certainty to said documents and otherwise  attempt
17  to transfer a questionable debt to itself and/ or others, and/or to the Defendants herein,
18  and unjustly enrich themselves and/ or others, and/or the Defendants herein and cause
19  an ostensible but otherwise invalid foreclosure.

20         17.     Plaintiff is informed and believes, and thereon alleges, that Defendant
21  Aurora Bank was, at the time of closing of the initial transactions referenced herein, was
22  under investigation by the Federal Government and ultimately operated pursuant to a
23  Consent Order with the Office of Thrift and Supervision that became effective on April 13,
24  2011. [A true and correct copy of the aforementioned Consent Order, issued against
25  Defendant Aurora, and related documents, dated April 13, 2011, and relating to
26  foreclosure events from January 1, 2009 to December 31, 2010, is attached hereto as
27  Exhibit "C" and incorporated here by this reference].

18.     Plaintiff is informed and believes and thereon alleges that, at all times mentioned herein, Defendants were agents, servants, employees, alter egos, superiors, successors in interest, joint venturers and co-conspirators of each other in doing the things herein alleged, or acting within the scope and authority of such agents, servants, employees, alter egos, superiors, successors in interest, joint venturers and co-conspirators with the permission and consent of their co-defendants and consequently, each Defendant named herein is jointly and severally liable to Plaintiff for the damages and harm sustained as a result of their wrongful conduct.

19.     At all times mentioned herein, whenever an act or omission of a business entity is alleged, said allegation shall be deemed to mean and include an allegation that the business entity  acted or omitted to act through its authorized officers, directors, members, agents, servants, and/or employees acting within the course and scope of their duties, that the act or omission was authorized and/or ratified by the business entity.

20.     The true names and capacities, whether individual or corporate, associate or otherwise, of  Defendants 1 through 10, inclusive, and each of them, are unknown to Plaintiff at this time, and Plaintiff therefore sues said Defendants by such fictitious names.  Plaintiff alleges, upon information and belief, that each such DOE Defendant is responsible for the actions herein alleged.  Plaintiff will seek leave to amend the Complaint when the names of said DOE Defendants have been ascertained.

21.     At all times relevant herein, Defendants, and each of them, knew or realized that the other Defendants, and each of them, were engaging in or planned to engage in the acts alleged in this Complaint.  Knowing or realizing that the other Defendants, and each of them, were engaging in or planning to engage in wrongful conduct, Defendants, and each of them, nevertheless facilitated in the commission of those acts.  Defendants, and each of them, intended to and did encourage , facilitate, or

1   assist in the commission of the unlawful acts, and did thereby aid and abet the other

2   Defendants, and each of them, in the unlawful conduct.

3                    **BACKGROUND RELEVANT TO THE MATTER**

4          22.     Plaintiff incorporates herein by reference the allegations made in

5   the preceding paragraphs, as if fully set forth herein.

6

7          23.     Public recording of deeds, mortgages and other documents by which an

8   interest in real property is conveyed enables people to verify legal title by viewing and

9   examining instruments that evidence transfers.

10         24.     These public records provide transparency and the ability to

11  determine respective rights as they pertain to each piece of real property. In theory these

12  records should contain all that is needed to make basic judgments about the validity of

13  title.

14         25.     Land records do not automatically have legal significance and

15  they can appear valid on their face yet not convey a real interest even when the parties

16  believe, in good faith, they have contracted with regard to the property such as when

17  there is no legal title or interest to convey. These purported conveyances are then a

18  nullity. The fact an instrument is recorded does no guarantee the instrument is legally

19  valid or its enforceability.

20         26.     In or about the beginning of the last decade, when purchasing

21  property, instead of obtaining financing from a bank that would keep the loan over the

22  course of its lifetime, new processes were developed. Loans would be originated from

23  what might appear to be the bank a purchaser was working with but the loan would be

24  sold to and packaged by groups, referred to as securitizers, into mortgage backed

25  securities. The lender or originator sells the loans on a secondary market after the loan is

26  closed. The lender or originator execute new instruments to sell the loans, assign the

27  mortgages, the rights to receive payment on the debt. The procedures are complicated

and include multiple transfers, some designed to avoid certain tax effects, avoid financial risk and in recognition of various state and federal security laws.

27.   In order to assist in these multiple, complex transfers and save money and time avoiding local recording and its consequent costs and fees  MERS was developed and then utilized.  The MERS system bypassed the state and municipal registries in tracking land records and interests in real property.  MERS enabled transfers without physical instruments, acting as agents on behalf of lenders or securitization trusts. The ownership of the note, i.e. the beneficial interest in the real property, can continuously change hands without scrutiny or public knowledge or scrutiny.

28.   MERS also allowed its individual members to register their own transactions within the MERS system and thus there is a reasonable doubt as to the validity of the documents and as to the validity of documents contained in that system as there was no oversight at all.  Even well meaning persons could be influenced, in the press of business, to document transactions that may not have in fact existed.  Financial interests could overcome hard edged, legitimate decision making.  The system was result oriented, the means used frequently was questionable, certainly when reflected against historical recordation systems that at least attempted to provide certainty and transparency.

29.   Defendant Family Lending acted as a lender in name, when they were not in fact the lender, as in the case at hand.

30.   Gaps in transfer documents were filled in as a precursor to foreclosure as the foreclosing party would be called upon to justify its legal right to proceed with such action.  It has been claimed, and parties pursued by state and federal authorities, for processing paperwork under less than stellar procedures.  Defendant Family Lending closed a subsidiary, DocX, after intense scrutiny calling its operations a foreclosure fraud noting alleged fabrication of documents.

31.   Documents have been processed without verifying crucial

1   information, such as amounts owed, signatures forged, instruments backdated,

2   robosigning and passing around notary stamps.

3   ///

4   ///

5   ///

6

7                          **STATEMENT OF FACTS**

8        32.    Plaintiff incorporates herein by reference the allegations made in

9   the preceding paragraphs, as if fully set forth herein.

10       33.    Plaintiff is informed and believes, and thereon alleges, that on

11  or about May 12, 2006, Plaintiff's assignor Atiya Khan (hereinafter "Borrower") executed a

12  purchase money Note and Deed of Trust referencing loan number 10038030 in the

13  amount of $407,000.00 (hereinafter collectively referred to as the "Debt Instruments"

14  Exhibit "B").

15       34.    The Deed of Trust appears to have been recorded on

16  May 12, 2006 by the County of Riverside County Clerk.

17       35.    The Mortgage Beneficiary is noted as MERS, the

18  Trustee is noted as S.P.S. Affiliates, a California Corporation and the Lender is noted as

19  Defendant Family.  Defendant MERS is not named in the Note.

20       36.    S.P.S. Affiliates, a California Corporation is the named trustee

21  on the Deed of Trust.

22       37.    Plaintiff is informed and believes, and thereon alleges, that after

23  preparation of the debt instruments, these debt instruments were pooled into the noted

24  vehicle titled Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass Through

25  Certificates, Series 2006-6.  Defendant U.S. Bank was the named trustee.

26       38.    The documents related to and contained in the prospectus and

27  the subsequent agreement evidencing the Structured Adjustable Rate

Mortgage Loan Trust Mortgage Pass Through Certificates, Series 2006-6 indicate that the Khan transactions and debt instruments were among thousands of transactions and contained in Group 2, comprised of Pool 2 and/or Pool 3. These instruments were cross-collateralized and have been previously paid by servicers and/or by pool insurance funds. The documents that comprise this mortgage trust are voluminous and the schedule noting the subject mortgage loan are not accessible through the public portion of the Securities and Exchange, Edgar data base at:

http://www.sec.gov/Archives/edgar/data/1368240/000114420406028451/v047496_8-k.htm. It is alleged on information and belief, based on hundreds of pages of records previously examined, that the subject mortgage loan was in fact in Group 2, comprised of the cross-collateralized Pools 2 and 3. [A true and correct copy of the a face page and back up documentation of the trust is attached hereto as Exhibit "D" and incorporated here by this reference. As the immediately relevant documents comprise a minimum of 780 plus pages and some of the schedules and appendices are not currently available, they will be provided and/or sought through discovery ].

39.    The funds raised in the Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass Through Certificates, Series 2006-6 were in the amount of $645,032,100.00.

40.    The subject loan was not funded until the mortgage backed security trust was closed.

41.    Defendant Lehman, sponsor was the seller of the mortgage loans to the depositor, Defendant Structured, and Defendant Aurora was the master servicer noted in the Prospectus.

42.    The cut off date of the subject trust was June 1, 2006. At that time, the mortgage loans will be assigned to the Trustee, Defendant U.S. Bank, together with all principal and interest received with respect to the mortgage loans. The Securities Administrator, in this case Wells Fargo, N.A., will authenticate and deliver the required

certificates. All the documents relating to the mortgage loan are delivered to the trustee as part of this phase. Each transfer is a sale to the trust.

43.    Defendant U.S. Bank, in this way, transferred the debt instruments to presently unknown and unnamed investors in a mortgage pool underwritten and managed by unknown persons. Upon conversion of the Debt Instruments into a security and sales of the debt instruments to unknown and unnamed investors in the mortgage pool, Defendant U.S. Bank released partial funds from the sale of securities and purported to fund Borrower's loan for the purchase of the Property.

44.    Plaintiff is informed and believes, and thereon alleges, that neither Defendant Aurora, a servicer, nor Defendant MERS had the authority to assign the subject debt instruments to itself, and/or themselves, or subsequently substitute a trustee and/or declare a default on the subject property.

45.    Defendant Family ceased to exist as a separate entity as of May 9, 2007 by apparent merger with Standard Pacific Corp and became known as Standard Pacific Mortgage, Inc.. The legal ramifications of that name change and/or other change in its form and/or status is unknown at the present time. What is apparent is that Defendant Family ceased to function as such by May 2007, a year after the subject property was purchased.

46.    Defendant MERS role in this case arguably ceased to exist on or before May 9, 2007 when Defendant Family Lending could no longer operate as previously named. MERS could no longer be a nominee of a non-existent entity nor could MERS act as a beneficiary to successors or assigns of Defendant Family as Defendant Family ceased to exist in May of 2007.

47.    Despite this fact, Defendant MERS professes to act as nominee for Defendant Family Lending in a Corporate Assignment of Deed of Trust on May 14, 2012.

48.    Defendant Lashley, although apparently preparing documents for

1 | and acting on behalf of Defendant Aurora, prepared the Corporate Assignment and Deed
2 | of Trust, noted above, as Vice-President of Defendant MERS as nominee for the non-
3 | existent Defendant Family Lending. [A true and correct copy of the aforementioned is
4 | attached hereto as Exhibit "E" and incorporated here by this reference].

5

6 |        49.    Not only is an apparent employee of Defendant Aurora, Defendant
7 | Lashley, professing to act as Vice President of another organization, here Defendant
8 | MERS, Defendant Lashley is professing to act on behalf of an entity that admittedly has
9 | no beneficial interest or other interest in the underlying note that evidences the mortgage
10 | loan, has no financial interest or other interest if a loan is re-paid, in part or fully, does not
11 | own or otherwise have servicing rights and has no rights in the real property securing any
12 | debt.

13 |        50.    Defendant MERS is simply a business creation, a fiction of sorts, by
14 | which Defendant MERS at the whim of its members and at inconsistent times claims to be
15 | the mortgagee, or to be an agent of the mortgagee and, at others, that it can act as a
16 | common agent for undisclosed and undocumented principals.

17 |        51.    Defendant MERS further recites in the Corporate Assignment and
18 | Deed of Trust, Exhibit "E" that value was received, when nothing was transferred and
19 | there were no rights under the Deed of Trust to be transferred in the manner described
20 | herein.

21 |        52.    Plaintiff alleges that mortgage fraud was thereby committed as described
22 | in the California *Penal Cope* §532f(a)(4) in that the documents contain gross
23 | representations of fact in combination with the knowing intention to deprive the target
24 | homeowner of money and property.

25

26 |        53.    Upon information and belief, Plaintiff alleges that the recordation of debt
27

1  instruments on May 12, 2006 took place after Defendant Family Lending pledged the debt

2  instruments to Defendant Lehman who acted as a seller in the scheme of raising funds

3  using this debt instrument and others.  Defendant Lehman obligated itself to payments on

4  the debt instruments when Defendant Lehman exchanged the debt instruments for cash

5  obtained from sale of certificates to unknown and unnamed investors through their

6  underwriting conduit Lehman Brothers Inc.

7

8      54.    Plaintiff further alleges that an affiliate of the underwriter, Defendant

9  Lehman, provided the funding to Defendant Lehman to purchase the debt instruments

10  from Defendant Family Lending that was then disguised as a loan to the borrowers.

11  Summarily, Plaintiff alleges that the sale of debt instruments along with borrower's own

12  funds generated the funds for purchase of subject property.

13      55.    Plaintiff alleges that unknown and unnamed investors in a pool of

14  mortgage debt instruments in the trust res noted herein originated through various entities,

15  not  including Defendant Family Loan Defendant Family Loan was a wrongfully named

16  lender in the borrower's Note and Deed of Trust executed by the "borrowers" on May 10,

17  2010.

18      56.    Defendant Family Loan did not therefore fund the assignor's loan but that

19  it was instead underwritten by Defendant Lehman and it was Defendant Structured who

20  purchased the debt instruments from seller and Defendant Lehman.

21      57.    Defendant Family Loan merely originated assignor's debt instruments

22  and wrongfully named itself as a lender when it fact it was merely acting as a conduit

23  between unnamed investors and the assignor as the debt instruments were pledged to

24  other Defendants before being converted into the named security and thereby sold to

25  investors.

26      58.    Plaintiff asserts that while there is a color of securitization and is

27

apparent from the documents filed by the defendants in United States Securities Exchange Commission, borrower's debt instruments were, in fact, never properly securitized.

59.   Plaintiff alleges that no loan that funded in exchange for the subject note and deed of trust as borrower's note and deed of trust was converted into a security before releasing funds received from investors to the borrowers in the original transaction. Plaintiff therefore seeks an accounting.

60.   Plaintiff alleges that, under the facts of this case and because proper rules were not followed, Defendants herein lacked the right and ability to effectively foreclose on the subject property and lacked the right to collect payments thereon.

61.   The Plaintiff does not challenge defendant's right to securitize a fully funded loan transaction or a securitization of mortgage loans but does, here, as the loan did not fund.  Plaintiff alleges that the debt instruments were pledged and then converted into a security and the bundled into a pool of mortgages from which investors would receive beneficial interest in exchange for investment.  Because Defendant Aurora was not the Lender, and Defendant Aurora had no interest in the Debt Instruments at the time it sold them to the unknown investors. Although the Deed of Trust indicates that Defendant Family was the lender,  the funds were obtained from another source, and accordingly, Defendant Family could not pass valid title to the debt instruments.

62.   Even assuming Defendant Lashley had some authority to sign for Defendant MERS and/or Defendant Aurora, such an assignment, without an assignment and/or transfer of the underlying note would convey no interest and has no legal effect.

63.   In any case, even if the Deed of Trust and Note was valid, none of the Defendants are successors and/or assigns of Defendant Family Lending.

## THE SUBSTITUTION OF TRUSTEE

64.     Plaintiff incorporates herein by reference the allegations made in the preceding paragraphs as if fully set forth herein.

65.     On or about June 13, 2012, Michele Rice, as Vice President of Defendant Aurora, inaccurately claiming to be acting on behalf of the present beneficiary under the Deed of Trust, dated May 9, 2006, claiming S.P.S. Affiliates as original Trustee, and Defendant MERS as nominee for Defendant Family Lending, purports to substitute Defendant Integrated as Trustee.  [A true and correct copy of the aforementioned is attached hereto as Exhibit "F" and incorporated here by this reference].

66.     California *Civil Code* § 2934a (a)(1) provides only that a beneficiary of a Deed of Trust may replace the trustee.  Defendant Integrated was neither properly substituted by a beneficiary or by any authorized representative of a known beneficiary.

67.     This Substitution is also not authorized in the Deed of Trust stating that the procedure for substitution (provided therein) shall govern. [Page 12, ¶ 24 of Exhibit "B"].

68.     Defendants therefore had no power to foreclose based on the aforementioned Substitution and did so wrongfully.

69.     Further, Michele Rice affixes her signature as Vice President of Defendant Aurora which was not a creditor, Mortgagee and not the legal owner of the Note or beneficiary of the Deed of Trust.

70.     Nor did Defendant Family Lending appoint Defendant Integrated as substitute trustee at any time.  At best, Defendant Family Lending was an originator and/or broker and not a lender as noted herein and Defendant MERS ceased to be a nominee when Defendant Family Lending ceased to exist.  Defendant Family Lending ceased to exist as a party upon the sale of the underlying debt instruments in any case.

71.     In or about September 13, 2012 another Assignment of Deed of Trust was executed by Alex Choi as Assistant Secretary of Defendant Nationstar indicating that Alex hoi did so as attorney in fact for Defendant Aurora.  There is no known Power of

Attorney and/or other document giving rise to this stated authority.  This Assignment was subsequently recorded .  [A true and correct copy of the aforementioned is attached hereto as Exhibit "G" and incorporated here by this reference].

72.    As stated herein above, other persons had the authority and not Alex Choi as agent or otherwise.  This Assignment is void to transfer any rights and/or interest.

73.    On or about October 1, 2012, a Notice of Trustee's Sale was signed by Loretta Echols as Assistant Vice-President of Defendant Integrated as Trustee.  The amounts stated on the Notice of Default are incorrect and no beneficiary has declared a default.  Nor did this Notice of Sale provide authority to Defendant Integrated to conduct a sale as Defendant Integrated was not a properly substituted trustee by any correct beneficiary.  [A true and correct copy of the Notice of Trustee's Sale is attached hereto as Exhibit "H" and incorporated here by this reference].

74.    Thereafter, on or about September 3, 2013, an unlawful sale was held despite notice of the present claims causing extreme and continuing damage to the Plaintiff herein.  [A true and correct copy of the Trustee's Deed Upon Sale, dated September 3, 2013, is attached hereto as Exhibit "I" and incorporated here by this reference].

### FIRST CLAIM FOR RELIEF-NEGLIGENCE

### (Against all Defendants and Does 1 to 100)

75.    Plaintiff incorporates herein by reference the allegations made in the preceding paragraph as if fully set forth herein.

76.    At all times relevant herein, Defendants, acting as loan servicers and lenders had a duty to exercise reasonable care and skill to maintain proper and accurate records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited to, disclosing to Plaintiff's Assignor, the status of any foreclosure actions taken by it, and/or, including but not limited to transfers of beneficial interests and transfers of servicing duties, refraining

1 from taking any actions against Plaintiff's assignor that it did not have the legal authority to

2 do, and otherwise providing all relevant information regarding the loans Plaintiff's Assignor

3 had with it to Plaintiff's assignor.

4       77.    In taking the actions herein alleged, and in failing to take the actions

5 herein alleged, Defendants breached their duty of due care and skill to Plaintiff and

6 Plaintiff's Assignor in the servicing of Plaintiff's Assignor's loans by, among other things,

7 failing to disclose to  Plaintiff's Assignor that it was foreclosing on the subject property,

8 filing false and misleading documents with the Los Angeles County Recorder's Office,

9 preparing said false documents, and foreclosing on the Subject Property without proper

10 authority to do so.

11       78.    As a direct and proximate cause of Defendants' negligence, Plaintiff has

12 suffered, and continues to suffer,  general and special damages in an amount according

13 to proof at trial.

14                **SECOND CLAIM FOR RELIEF-NEGLIGENCE**

15             **(Against Defendant Integrated and Does 1 to 100)**

16       79.    Plaintiff incorporates herein by reference the allegations made in

17 the preceding paragraphs, as if fully set forth herein.

18       80.    Defendant Integrated had a duty to Plaintiff and Plaintiff's predecessors

19 in interest to insure that the foreclosure sale was conducted in a proper lawful manner and

20 that the rights under any note and deed of trust authorized such procedure.

21       81.    Defendant Integrated breached that duty by failing to take minimal steps

22 to insure there was an adequate basis for any such foreclosure and consequent sale,

23 failed to give proper and/or required notices and/or sufficient information with which to

24 correct the situation before the damage took place.

25       82.    Plaintiff has been damaged by Defendant Integrated in an amount

26 exceeding $10,000 that will be proven at trial of this matter.

27             **THIRD CLAIM FOR RELIEF-WRONGFUL FORECLOSURE**

**(Against Defendants Integrated, Nationstar and Does 1 to 100)**

83.   Plaintiff incorporates herein by reference the allegations made in the preceding paragraphs, as if fully set forth herein.

85.   Plaintiff is informed and believes and thereon alleges that, after the origination and funding of the loan, it was sold and/or transferred to investors and/or other entities and that none of the Defendants owned the loans or the corresponding notes at the time of the foreclosure sale nor did they acquire the loans and/or notes at any time. Moreover, the named Defendants were not lawfully appointed as Trustee.  Accordingly, none of the Defendants in this action had the right to declare default, cause notices of default to be issued or recorded, or foreclose on Plaintiff's interest in the subject property. None of the Defendants in this action was the note holder or a beneficiary at any time with regard to Plaintiff's or Assignor's rights under the loan.

86.   Plaintiff further alleges on information and belief that none of the Defendants in this action were beneficiaries or representatives of the beneficiary and that none of them were properly assigned the promissory notes and deed of trust executed by Plaintiff's assignor.  Defendants failed to record the Limited, or any, Power of Attorney concurrently with the Substitution of  Trustee as required under California law. Defendants, based on these facts, did not have the authority to substitute the trustee under the First Deed of Trust and/or, even if they did, they acted unlawfully prior to the time they were allegedly substituted in as trustee.

87.   Additionally, Defendants violated California Civil Code §2923.5(a) which requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower or person in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure" California Civil Code §2923.5(a) requires a default notice to include a truthful declaration from the mortgagee, beneficiary or authorized agent that they attempted to contact the borrower with due diligence.  None of the Defendants assessed Plaintiff's assignor's financial situation correctly or in good faith as required by this section

1  prior to the Notices of Default on the subject property in this action.  Accordingly, the

2  Defendants did not fulfill their legal obligations and therefore, any acts based on the

3  Notice of Default taken thereafter were invalid and void.

4      88.    Consequently, Defendants engaged in a fraudulent foreclosure of the

5  Subject Property.  In the alternative, if they had any legal authority, they failed to comply

6  with California Civil Code §§ 2923.5 and 2923.6.

7      89.    As a result of the above-described breaches and wrongful conduct by

8  Defendants, Plaintiff has suffered general and special damages in an amount according to

9  proof at trial.

10      **FOURTH CLAIM FOR RELIEF-VIOLATION OF 12 USC §1692 ET SEQ**

11      **(Against Defendants Nationstar, MERS, Merscorp, Intergarted and Does)**

12      90.    Plaintiff incorporates herein by reference the allegations made

13  in the preceding paragraphs, as if fully set forth herein.

14      91.    Federal law prohibits the use of any "false, deceptive, or misleading

15  representation or means in connection with the collections of any debt...including the false

16  representation of the...character, amount or legal status of any debt...and the threat to

17  take an action that cannot legally be taken..."

18      92.    In taking the actions herein alleged, and in attempting to collect of

19  Plaintiff's Assignor's debt in the manner described herein, Defendants misrepresented the

20  status of the debt, falsely represented the debt was due to the Defendants, that

21  Defendants Nationstar and Aurora had been validly assigned the debt when they were

22  not, and demanded payment under false pretenses.

23      93.    As a result of the above-described breaches and wrongful conduct by

24  Defendants, Plaintiff has suffered general, statutory and special damages in an amount

25  according to proof at trial.

26  proof at trial.

27      **FIFTH CLAIM FOR RELIEF-CANCELLATION OF INSTRUMENTS**

**(Against Defendants Nationstar, Aurora, MERS, Merscorp and Does 1 to 100)**

94.     Plaintiff incorporates herein by reference the allegations made in the preceding paragraphs, as if fully set forth herein.

95.     California Civil Code § 3412 provides "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may on that person's application, be so adjudged and ordered to be delivered up or cancelled."

96.     Further, *Civil Code* § 3412 calls for: "[w]here-ever an instrument of writing exists, which has been obtained without consideration, or has become a nullity, or which, if left outstanding, may cause injury to a Plaintiff, or may be vexatiously used against him, after the evidence to impeach or invalidate it is lost or may throw a cloud or suspicion over his title, a court of equity will afford relief by ordering it to be delivered up and cancelled.

97.     Plaintiff herein seeks to cancel the Deed of Trust and Note against the subject property previously executed, if any, that has resulted from fraudulent activity of Defendants in the present action against the subject property.

98.     Plaintiff alleges that there have not been any recorded documents showing any effective assignment of Plaintiff's Assignor's Note or Deed of Trust and endorsement of Plaintiff's Assignor's original mortgage Note and Defendants, and each of them, willfully concealed the transfer scheme from the Plaintiff and/or Plaintiff's Assignor by selling and/or assigning a Note and/or Deed of Trust fraudulently created and executed by the Defendants, and each of them, against Plaintiff's subject property shortly after its creation and/or origination.

99.     Wherefore, Plaintiff prays to this Court to issue and order that the Substitution of Trustee, the Assignments of Deed of Trust, the Notice of Default, and the Notice of Trustee's Sale are void and shall be expunged from the public record; for costs of suit incurred herein; and for such other relief as this Court deems just and proper.

///

## SIXTH CLAIM FOR RELIEF-QUIET TITLE

### (Against Defendants Nationstar, Aurora, Family Lending and Does 1 to 100)

100.    Plaintiff hereby incorporates by reference each and every one of the preceding, paragraphs as though the same were fully set forth herein.

101.    Plaintiff is the assignee of claims and causes of action and is the owner, and beneficiary of the subject property that is subject of the  Note and Deed of Trust.

102.    The Note and Deed of Trust  were paid off when Defendants, and each of them, converted the debt instruments into a security for mutual gain prior to the funding of the Note.

103.    Pursuant to assignment of Assignor's claims, Plaintiff's is fraudulently deprived of his clear title and beneficial interest in the subject property in which the Assignor was induced to enter into a loan transaction which concealed the fact that the loan never actually funded.

104.    Assignor's loan on Plaintiff's subject property was never funded and the debt instruments evidencing the loan was never reconveyed.

105.    Subsequently, Defendants assigned their rights to investors whose

identity is not yet ascertained.  Thereafter, one or more unrecorded assignments may have been made.

106.   On the date of the foreclosure, Defendants had no rights to Plaintiff' Assignors Note or Deed of Trust and any purported transfer of Plaintiff's Deed of Trust to Defendants is unenforceable and void.

107.   The recording of the corporate assignment of Deed of Trust to Defendants was without authority and has created a cloud on Plaintiff's title.

108.   Plaintiff is certain that none of the Defendants hold Plaintiff's Assignor's Note and Deed to Trust and/or is uncertain as to who holds Assignor's Note and Deed of Trust secured by Plaintiff's subject property.

109.   Plaintiff seeks hereby to quiet title against all adverse claims of any of the Defendants, and each of them, herein as to the subject property.

## SEVENTH CLAIM FOR RELIEF- VIOLATION OF BUSINESS AND PROFESSION CODE SECTION 17200, ET SEQ.

### [Against all Defendants]

110.   Plaintiff hereby incorporates by reference each and every one of the preceding, paragraphs as though the same were fully set forth herein.

111.   Defendants, and each of their, conduct, for the reasons stated herein, is in violation of Cal. *Penal Code* § 532(f)(a)(4).

112.   California *Business and Professions Code* § 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair, or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature within the meaning of California *Business and Professions Code* § 17200..

113.   As more fully described hereinabove, Defendants, and each of their acts

and practices are likely to deceive and are therefore unlawful, unfair, and fraudulent. This conduct is ongoing and continues to this date.

114.   Specifically as set forth above, Defendants engage in unfair business practices with respect to mortgage loan servicing , assignments of notes and deeds of trust, foreclosure of residential properties and related matters by, among other thiings,

(a) instituting improper or premature foreclosure proceedings to generate un warranted fees;

(b) Executing and recording false and misleading documents;

(c) Executing and recording documents without the legal authority to do so;

(d) Failing to disclose the principal for which documents were being executed and recorded in violation of California *Civil Code* § *1095;*

(e) Failing to record Powers of Attorney in connection with other recorded documents in violation of California *Civil Code* § *2933;*

(f) Violating the security first rule;

(g) Demanding and accepting payments for debts that were non-existent;

(h) Acting as beneficiaries and trustees without the legal authority to do so;

.(i) Failing and refusing to remit payment of surplus funds pursuant to California *Civil Code* §§ 2924j and 2924k*;*

(j) Wrongfully witholding and converting surplus funds that were due and owing to the trustor;

(k) Wrongfully deducting attorneys' fees and costs from surplus funds owing to the trustor;

(l) Failing to give proper notice of a trustee's sale and the postponement of the sale pursuant to California *Civil Code* §2924g*;*

(m) Failing to comply with California *Civil Code* §§ 2923.5*;*

(n) Failing to comply with the HAMP guidelines;

(o) Misrepresenting the foreclosure status of properties to borrowers; and,

(p) Other deceptive business practices.

115.   Plaintiff alleges that by engaging in the above described acts and/or practices, as alleged herein, including the recordation of documents that were fabricated to ease the burden of complying with the law and in derogation of Plaintiff's and other's rights and/or were knowingly fabricated solely to justify the actions the Defendants wanted to take,  Defendants have violated several California laws and regulations and said predicate acts are therefore per se violations of California *Business and Professions Code* § 17200, et seq.

116.   Plaintiff alleges that Defendants' misconduct, as alleged herein, gave, and have given, Defendants and unfair competitive advantage over their competitors. The scheme implemented by Defendants is designed by Defendants is designed to defraud California consumers and enrich the Defendants.

117.   The foregoing acts and practices have caused substantial harm to California consumers.

118.   Plaintiff alleges that as a direct and proximate result of the aforesaid acts, Defendants have prospered and benefitted from Plaintiff by collecting mortgage payments and fees for foreclosure related services, and have been unjustly enriched from their act of foreclosing on Plaintiff's home when they agreed not to do so and/or to do so in compliance with applicable laws.

119.   By reason of the foregoing, Defendants have been unjustly enriched and should be required to discharge their illicit profits and/or make restitution to Plaintiffs and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to California *Business and Professions*

*Code* § 17203 and § 17204. Additionally, Plaintiffs are therefore entitled to injunctive relief and attorney's fees as available under California *Business and Professions Code* § 17200 and related sections.

120.   Defendants, and each of their seriatim recordings of the invalid Assignments of the Deed of Trust violates California *Penal Code* § 532(f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission. Upon information and belief, Defendants, and each of them, have committed mortgage fraud by filing the Corporate Assignment of Deed of Trust with the County Recorder's Office with the knowledge that the documents contained a deliberate misstatement, misrepresentation, or omission of fact.

121.   1.Plaintiff alleges that Defendants, and each of their, misconduct as alleged herein, gave Defendants, and each of them, an unfair competitive advantage. The scheme implemented by the Defendants, and each of them, is designed to defraud California consumers and enrich Defendants, and each of them.

122.   The foregoing acts and practices have caused them substantial harm to California consumers including the Plaintiff and Plaintiff's Assignors.

123.   By reason of the foregoing, Defendants, and each of them, have been unjustly enriched and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code §§ 17203 and 17204.

124.   As a direct and proximate result of the actions of the Defendants, and

each of them, as stated above, Plaintiff has been injured in that a cloud has been placed upon the title to the subject property and Defendants, and each of them, have failed to remove this cloud from Plaintiff's title.

125.   Plaintiff is entitled to an order compelling Defendants, any purported assignee and Defendants Selene, the purported mortgage servicer and any other Doe Defendants, and each of them, from claiming an interest in and to the subject property and to take any and all actions necessary to remove the cloud they have placed upon her title and an order enjoining such Defendants, and each of them, from taking such actions again in the future.

## EIGHTH CLAIM FOR RELIEF- FRADULENT MISREPRESENTATION

### [Against all Defendants]

126.   Plaintiff hereby incorporates by reference each and every one of the preceding, paragraphs as though the same were fully set forth herein.

127.   Defendants, and each of their, conduct, for the reasons stated herein, engaged in fraudulent misrepresentation.

128.   Defendants, and each of their acts and practices are likely to deceive and are therefore unlawful, unfair, and fraudulent.  This conduct is ongoing and continues to this date.

129.   Specifically as set forth, Defendants engaged in fraudulent misrepresentation in connection with mortgage loan servicing , assignments of notes and deeds of trust, foreclosure of residential properties and related matters by, among other things,

(a) instituting improper or premature foreclosure proceedings to generate un warranted fees;

(b) Executing and recording false and misleading documents;

(c)  Executing and recording documents without the legal authority to do so;

(d) Failing to disclose the principal for which documents were being executed and recorded in violation of California *Civil Code* § *1095;*

(e) Failing to record Powers of Attorney in connection with other recorded documents in violation of California *Civil Code* § *2933;*

(f) Violating the security first rule;

(g) Demanding and accepting payments for debts that were non-existent;

(h) Acting as beneficiaries and trustees without the legal authority to do so;

.(i) Failing and refusing to remit payment of surplus funds pursuant to California *Civil Code* §§ 2924j and 2924k;

(j) Wrongfully withholding and converting surplus funds that were due and owing to the trustor;

(k) Wrongfully deducting attorneys' fees and costs from surplus funds owing to the trustor;

(l) Failing to give proper notice of a trustee's sale and the postponement of the sale pursuant to California *Civil Code* §2924g;

(m) Failing to comply with California *Civil Code* §§ 2923.5;

(n) Failing to comply with the HAMP guidelines;

(o) Misrepresenting the foreclosure status of properties to borrowers; and,

(p) Other deceptive business practices.

130.   Plaintiff alleges that by engaging in the above described acts and/or practices, as alleged herein, including the recordation of documents that were fabricated to ease the burden of complying with the law and in derogation of Plaintiff's and other's rights and/or were knowingly fabricated solely to justify the actions the

Defendants wanted to take, Defendants intentionally and fraudulently misrepresented the facts causing reliance thereon to the detriment of Plaintiff and Plaintiff's assignor.

131.  Plaintiff alleges that Defendants' misconduct caused extreme damage, including emotional distress, loss of income, costs and attorney fees in excess of $400,000.00.

132.  Plaintiff alleges that as a direct and proximate result of the aforesaid acts, Defendants have prospered and benefitted from Plaintiff by collecting mortgage payments and fees for foreclosure related services, and have been unjustly enriched from their act of foreclosing on Plaintiff's home when they had no basis for such foreclosure.

133.  Defendants, and each of their seriatim recordings of the invalid Assignments of the Deed of Trust, Notices of Default and related documents violates California *Penal Code* § 532(f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission. Upon information and belief, Defendants, and each of them, have committed mortgage fraud by filing the aforesaid documents with the County Recorder's Office with the knowledge that the documents contained deliberate misstatements, misrepresentations, and omissions of fact.

134.  Plaintiff alleges that Defendants, and each of their, misconduct as alleged herein, was designed to defraud Plaintiff and Plaintiff's assignor, California consumers and enrich Defendants, and each of them.

135.  As a direct and proximate result of the actions of the Defendants, and

each of them, as stated above, Plaintiff has been further injured in that a cloud has been placed upon the title to the subject property and Defendants, and each of them, have failed to remove this cloud from Plaintiff's title.

136.   These acts by Defendants Aurora, Integrated, MERS, Merscorp, Family Lending and Nationstar were done with conscious disregard for the requirements of the law and, in particular, the servicing of loans, the legal transfer of documents affecting title instruments and eventual foreclosure and were done for illicit gain.

137.   By virtue of these Defendant's wilful and wrongful            conduct, Plaintiff is entitled to general and exemplary damages in excess of $$500,000.00.

138.   Plaintiff is further entitled to an order compelling Defendants, any purported assignee and Defendant Nationstar, now the purported owner, and any other Doe Defendants, and each of them, from claiming an interest in and to the subject property and to take any and all actions necessary to remove the cloud they have placed upon her title and an order enjoining such Defendants, and each of them, from taking such actions again in the future.

### NINTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT-RESTITUTION
**(Against Defendants Aurora, Lehman, Structured, Nationstar, Standard Pacific, Family Lending, U.S. Bank and Does 1 to 100)**

139.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as though the same were fully set forth herein.

140.   Defendants named herein have demanded monthly mortgage payments from the borrower on Plaintiff's property and continued to collect payments from the borrower.

141.   Plaintiff reasonably relied upon Defendant Nationstar and Defendant's assertions

that it/they are/were entitled to the benefit of borrower's mortgage payments.

142.   Defendant Family and Defendant Nationstar knowingly accepted payments and retained them for its own use knowing full well that Defendant Nationstar, as a mere debt collector did not acquire an interest in borrower's Note, such that they were entitled to, could accept or keep borrower's payments. It is inequitable for Defendant Nationstar, as a mere debt collector to retain the payments it received from Plaintiff and/or borrower when it did not have legal authority to collect those payments.  The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by law without regard to the intention of the parties, and is designed to restore the aggrieved party to their former position by return of the thing or its equivalent in money.

143.   Section 23 of the Plaintiff's Deed of Trust states that: "*Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the property without warranty to the person or persons legally entitled to it.*"  The obligations to Defendant Nationstar under the Deed of Trust were fulfilled when Defendant Family Lending  received the balance of the Note proceeds upon the sale of the subject note and Mortgage to presently unknown entity.  Defendant Family has been unjustly enriched by collecting monthly payments from Plaintiff and/or borrower when it has no interest or title in borrower's Note and deed of trust.

144.   Plaintiff seeks restitution for any and all payments the borrower has made to Defendant Family as Plaintiff and/or borrower have in fact made payments to Defendants' agents pursuant to and in reliance upon Defendant's claims to rights to

such payments.

145.   As alleged herein, Defendants do not have rights to such payments. Defendants had knowledge of such circumstances giving rise to unjust enrichment at the time of claiming rights to payment from Plaintiff/borrower on her loan or on any loan purportedly made securing plaintiff's property.

146.   Defendants acquired a benefit at the expense of Plaintiff with knowledge. Defendants received a benefit from Plaintiff of money.  It is unjust for Defendants to retain the benefit at the expense of Plaintiff and/or borrower and his property.

147.   Plaintiff asks this Court to issue, order and decree that defendants had no right to payments on the loans so secured by Plaintiff's property and shall return to Plaintiff/borrower all payments so made. And prays for the following judgment as set forth below:

a.   There was never any proper legal assignment of the full and unencumbered legal interest in both the Note and Deed of trust from the original lender to any entity or any defendant;

b.   None of the defendants have any legal rights in either the Note or Deed of trust that secures plaintiff's property;

c.   The  Deed Assignment, Trustee substitution, Notice of Default, and Notices of Trustee Sale are fraudulent and invalid documents;

d.   The Defendants have no legal standing and legal rights to institute any foreclosure proceedings; and

e.   Defendants had no legal standing and legal rights to institute any foreclosure proceedings; and

f.   That any purported foreclosure proceedings by the defendants is found illegal and said transactions unwound by the defendants.

### TENTH CLAIM FOR RELIEF
### SLANDER OF TITLE
### (Against all Defendants)

148.    Plaintiff incorporates herein by reference each and every one of the preceding paragraphs as though the same were fully set for the herein.

149.    Defendant Integrated purportedly but falsely acting either as the trustee or the agent of the beneficiary of the Deed of Trust, wrongfully and without privilege, caused a Notice of Default, Substitution of Trustee, Two fraudulent assignment of Deed of Trust, Notice of Trustee Sale caused a Trustee's Deed Upon Sale to be recorded against the subject property.

150.    None of the defendants, whether jointly or severally, is a trustee, beneficiary or assignee of any beneficiary of any deed of trust recorded against the subject property. Accordingly, they wrongfully caused the recording of the Notice of Default, Assignments of Deed of Trust, Substitution of Trustee, Notice of Trustee's Sale and Trustee's deed upon sale against the subject property.

151.    By doing the acts described above, Defendants have slandered borrower's and Plaintiff's title to the subject property.

152.    In that the conduct and acts defendants violated among others, California *Civil Code* § 2924(a)(1)(C), such conduct and acts were not privileged.

153.    The wrongful conduct of the defendants caused the borrower to suffer damages in an amount to be proven at trial but not less than $ 1,500,000.00.

### ELEVENTH CLAIM FOR RELIEF
### VIOLATION OF CALIFORNIA *CIVIL CODE* § 2934(A)(1)(a)
### (Against Nationstar, Integrated, MERS, Merscorp, Aurora and Does 1 to 100)

154.    Plaintiff hereby incorporates by reference each and every one of the

preceding, paragraphs as though the same were set forth fully herein.

California *Civil Code* § 2934(a)(1)(A) provides the following:

"[a]all beneficiaries" must execute the Substitution of Trustee (applicable California law when a lender seeks to substitute the trustee and pursue a foreclosure sale), and the substitution of trustee document must be RECORDED prior to trustee sale to be effective, if not, the resulting sale is VOID. In addition, <u>only the beneficiary</u> can substitute a Trustee under *California Civil Code § 2934a(a)(1)*, and such document must be recorded: Section 2934(a)(1) further provides that the trustee under trust deed upon real property or an estate for years therein given to secure an obligation to pay money and conferring no other duties upon the trustee than those which are incidental to the exercise of the power of sale therein conferred, may be substituted by the recording in the county in which the property is located of a substitution executed and acknowledged by(A) all of the beneficiaries under the trust deed, or successors in interest…" (emphasis added).

155. Here, Defendant Lashley and Alex Choi falsely purporting to be a Vice Presidents of Defendant MERS and Nationstar respectively executed document purporting to be valid Assignments of Deed of Trust, wrongfully naming Defendant Integrated as a substituted trustee when in fact a Corporate Assignment of Deed of Trust, even if valid, to Defendant Aurora and Defendant Nationstar were executed by themselves to themselves without the existence of legitimate legal authority. The Substitution of Trustee, referenced in this paragraph, is invalid, null and void as it was not executed by a beneficiary of borrower's note and/or deed of trust.

156. Therefore, there can be no valid non-judicial foreclosure where the trustee under the original deed of trust is not properly substituted by beneficiaries and with a validly recorded document. Furthermore, all beneficiaries, known and unknown, did not effectively execute the Substitution of Trustee.

### TWELFTH CLAIM FOR RELIEF-ACCOUNTING
**(Against all Defendants and Does 1 to 100)**

157. Plaintiff hereby incorporates by reference each and every one of the preceding, paragraphs as though the same were fully set forth herein.

158.   Defendant Nationstar purports to be a lender in borrower's loan transaction when in fact Defendant Nationstar acted as a broker to borrower's debt instruments without the consent of the borrower and by converting the debt instruments into a security before disbursing any proceeds thereof.

159.   Defendant Nationstar, then the purported assignee and its purported agents or nominees Defendant MERS and Defendant Integrated have held themselves out to be Plaintiff's and/or borrower's creditor, mortgage loan servicers and substituted trustee.  As a result of this purported relationship and the representations they made, to and with the borrower and the Plaintiff,  Defendants have a fiduciary duty to Plaintiff to account for payments made by the Plaintiff and/or borrower and monies received from conversion and sale of borrower's debt instruments.

160.   The balance due from the Defendant to the Plaintiff and/or the borrower can only be ascertained by accounting.

161.   As a result of the aforementioned conduct, fraudulent and other, Plaintiff and/or borrower paid to Defendant Nationstar, a purported lender and servicer to unknown and unnamed investors for several years. For reasons stated herein, this money was not actually owed to Defendant Nationstar. Plaintiff is entitled to accounting for funds received as a result of any conversion and sale of borrower's debt instruments.

162.   The amount of money due from Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of receipts and disbursements of the aforementioned transactions.  Plaintiff and/or borrower is informed and believes and thereon alleges that the amount due to him far exceeds the purported loan as evidenced by the debt instruments.

## PRAYER FOR RELIEF.

Wherefore, Plaintiff prays for judgment against the Defendants and each of them, jointly and severally, as follows:

1.      For a declaration of the rights and duties of the parties, specifically that the foreclosure of Plaintiff's residence was wrongful;

2.      For compensatory, special, general and punitive damages according to proof against all Defendants.

3.      Pursuant to California *Business and Professions Code* § 17203, that all Defendants, their successors, assigns, agents, representatives, employees and all persons who acted in concert with them be permanently enjoined from committing any acts of unfair competition in violation of California *Business and Professions Code* § 17200, including, but not limited to, the violations herein alleged.

4.      For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees according to proof.

5.      For reasonable attorney's fees and costs.

6.      For reasonable costs of suit and such other and further relief as the Court deems proper.

DATED: February 13, 2013                         MIHELL & ASSOCIATES

                                                 _____/s/_____

                                                 Monica A. Mihell

                                                 Attorneys for Plaintiff


### JURY DEMAND

Plaintiff demands a jury trial for all claims set forth herein.